Commonwealth *v.* Bey, Appellant.

Argued November 14, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*J. Harry Pershing,* with him *Adam B. Shaffer* and *Arthur D. Stevenson,* for appellant.

*William H. Colvin,* Assistant District Attorney, with him *William S. Rahauser,* District Attorney and *Craig T. Stockdale,* Assistant District Attorney, for appellee.

OPINION BY MR. JUSTICE JONES, January 11, 1950:

The appellant was convicted of murder in the first degree with penalty of life imprisonment. He appeals from the judgment entered on the sentence and assigns for error the lower court's refusal of his motion for a new trial. The reasons, which he continues to press here

as supporting the motion, may be summarized as follows: (1) the trial judge erred in refusing the defendant's motion to withdraw a juror because of an alleged improper statement by the district attorney in his opening to the jury; (2) the trial judge erred in excluding the testimony of a medical witness called by defendant to testify as an expert concerning the alleged effect of a prior chest injury in inducing the defendant's later criminal conduct; (3) the trial judge erred in failing to charge the jury fully on the law of voluntary manslaughter or on the facts relevant thereto; and (4) the trial judge erred in failing to charge the jury adequately on the law of self defense, especially in reference to the continuing effect of the victim's alleged prior threats against the defendant. The errors so ascribed are, to say the least, very superficially grounded as reference to the facts and circumstances preceding and attending the homicide will, in part, reveal.

In the late afternoon of the day of the killing, William D. Larkin, Jr., aged thirty-six, the victim, and six companions were returning by automobile from a funeral home where they had gone to view the remains of a deceased friend. Their immediate destination was the home of one of the group, George Sibbet, a patrolman, on Colmar Street, Pittsburgh. The street, which is on the hillside above Bigelow Boulevard, was steep and unpaved and, at the time here involved, was slippery from recent rain. Its cartway was relatively narrow, not being wide enough to accommodate more than a single car at a time. Stairs and boardwalks along the sides of the street were provided for the use of the pedestrian public. As the automobile was proceeding up Colmar Street, the defendant, twenty-two years old, was walking up the street in the middle of the road. He was accompanied by his brother, aged ten, and another boy, aged fifteen. Although signalled by the automobile's

horn, the defendant refused to move out of the way to let the automobile pass. Bickering and some name-calling ensued, but no physical violence was exerted by anyone. In the end, the automobile, being then unable to make the uphill grade, was backed down the street, turned around and driven to Sibbet's home by a more circuitous route. About the time it arrived there, the defendant and his companions, who had come directly up over the hill on foot, had reached the same locality. The quarreling was renewed at a distance and more epithets applied. The older of the two boys accompanying the defendant threw a stone at the victim's group. Larkin started after the defendant but, before reaching him, was restrained by his own brother and gave up the chase. Again, no physical violence had been done anyone. Larkin and his companions then entered the Sibbet home. After remaining there about half an hour, Larkin, intending to leave for his home for supper, opened the outer door of the Sibbet house onto the porch. Just as he did so, he was hit in the forehead by a thirty-two caliber bullet and fell dead in the doorway. The shot had been fired from a rifle in the hands of the defendant who was standing behind a telegraph pole on the opposite side of the street. After shooting Larkin, the defendant kept up a fusillade, hitting the front door jamb of the Sibbet house and shooting a number of times through the window of the front room where Sibbet had gone to see who was doing the firing. To avoid being hit by the flying bullets, the occupants of the house fell prone on the floor. Larkin's brother, while crawling across the floor in an effort to reach the victim, was struck in the leg by a bullet from the defendant's gun. All told, the defendant fired ten or eleven shots. During all of that time, he had not suffered any physical harm, or even the threat of it, from anyone. Following the dispute outside the Sibbet home earlier, he had gone to his home

eight blocks (or twelve minutes' walking time) distant where he procured the loaded rifle, an automatic Winchester, and then returned with it to take up his position opposite the Sibbet home from where he shot and killed Larkin. The rifle had a capacity of fourteen cartridges and could be reloaded automatically by the pumping action of an under-side lever. The defendant was apprehended at his home an hour or so after the shooting. The rifle, with one loaded shell still in its chamber, was found in a shed back of the house. The police also found six or seven empty rifle shells of like caliber near the telegraph pole from where the defendant had done the shooting. It is unquestioned that the defendant fired the fatal shot; and the circumstances, as above related, are not materially disputed.

The appellant's first complaint is so utterly devoid of any merit as to require but brief mention. During the district attorney's opening to the jury, appellant's counsel moved the court for the withdrawal of a juror because the district attorney had told the jury, inter alia, that "We will prove to you that the defendant committed a willful, deliberate and premeditated murder." The learned trial judge promptly and properly denied the motion. There was certainly nothing unfair or otherwise improper in the statement. It constituted no more than the district attorney's expression of a legal opinion as to what the Commonwealth's proofs, as he was forecasting them, would justify the jury in ultimately finding with respect to the defendant's guilt. Indeed, the degree of the crime, as the proven facts later disclosed, did not depend solely upon the jury's finding that the murder was willful, deliberate and premeditated. It was perpetrated by the defendant while lying in wait and, for that reason also, was of the first degree.

The contention that the trial judge erred in excluding the testimony of the defendant's medical witness is

equally groundless. What the defendant proposed to have the witness testify to would have been incompetent in the state of the proofs. Insanity was not the defense. There was no testimony that would have justified an expert opinion that the defendant was other than legally sane at the time of the commission of the crime. Nor was the witness called to testify concerning the defendant's sanity. He was offered for the purpose of testifying that a physical injury to the defendant's chest, accidentally received while at work in Ohio several months prior to the crime, had produced a *mental reaction* which, in the opinion of the witness, was capable of inducing the defendant's later criminal conduct. The witness had never attended the defendant. He had examined him two weeks prior to trial for the purpose of testifying and had then learned of the accident. The witness could not inject into the case an imputation concerning the defendant's sanity which the facts of record did not warrant. There being no testimony that the defendant had ever evidenced an aberrated mentality, there was no basis for the expression of an *expert* opinion that he was other than sane: cf. *Commonwealth v. Logan,* 361 Pa. 186, 195 et seq., 63 A. 2d 28. As a witness in his own behalf, the defendant exhibited normal intelligence. He had attended public schools through the tenth grade; and, in answering questions on cross-examination, as well as on direct, he showed alertness and understanding and a good vocabulary which he used discriminatingly.

The court's charge correctly defined voluntary manslaughter, specified the conditions required to be present in order to justify a verdict of guilty of that crime and explained to the jury that, where there is a felonious killing, from which malice is inferable, the burden is upon the defendant to reduce the grade of the crime from murder to manslaughter by a fair preponderance of the evidence. The appellant does not contend that the trial judge gave any erroneous instructions in such regard.

He merely asserts that the court did not charge the jury fully with respect to voluntary manslaughter, but he neglects here, as he did below, to point out wherein the charge is deficient. At the conclusion of the charge, the learned trial judge had inquired "Now, do counsel have any further instructions or corrections they desire made" and all that defendant's counsel then suggested was one slight correction with respect to the court's charge on reasonable doubt which the trial judge immediately adopted and instructed the jury accordingly.

Little need be said concerning the appellant's remaining complaint with the court's charge on the matter of self defense. As the facts plainly disclose, there was absolutely nothing to submit to the jury on that score. The defendant himself was a willful aggressor with a deadly weapon and vengefully acted, as he did, merely because of a relatively trifling quarrel an hour or so before, on account of which, he was in no danger whatsoever when he deliberately made his murderous attack on Larkin and the Sibbet household. The undeniable circumstances did not admit of a plea of self defense: see *Commonwealth v. Minoff*, 363 Pa. 287, 291-292, 69 A. 2d 145, and authorities there cited.

Regardless of the appellant's failure to assign reversible error, our review of both the law and the evidence, as contemplated by the Act of February 15, 1870, P. L. 15, Sec. 2 (19 PS §1187), confirms that the ingredients necessary to constitute murder in the first degree were proved to exist. The killing was felonious and the malice plainly inferable. The crime was therefore murder (*Commonwealth v. Minoff*, cit. supra) and, having been perpetrated by a willful, deliberate and premeditated killing, as well as by lying in wait, was murder in the first degree.

Judgment and sentence affirmed.